# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

GLACIER VALLEY TOURS, LLC,

Debtor.

Case No. J08-00213-DMD

Chapter 11

Filed On 8/4/09

## MEMORANDUM ON MOTION FOR RECONSIDERATION

On July 31, 2009, this court entered an order denying the trustee's motion to sell the debtor's major asset, real property in Haines, Alaska, free and clear, and an order granting the debtor's motion to convert this case to chapter 11. A motion for reconsideration of these orders was filed the same day by the Estate of Joseph M. Smith ("Smith"). A hearing on the motion for reconsideration was held on August 3, 2009. After further consideration of the evidence and comments of counsel presented at all of the hearings held on these two matters, I have concluded the motion for reconsideration should be granted.

Case Background

Glacier Valley Tours, LLC ("GVT"), filed a chapter 7 petition on April 22, 2008. Albert Gilliam is GVT's managing member. GVT's scheduled assets included a fee simple interest in 160 acres of remote wilderness property in Haines, Alaska, and $421,265.00 in personal property.[1] The real property has a scheduled value of $600,000.00 and is encumbered by a deed of trust in favor of Joseph M. Smith with an outstanding

---

[1] *See* Schedules A and B, filed Apr. 22, 2008 (Docket No. 1).

balance of $318,594.18.[2] The land had been used for GVT's guided tours. GVT's scheduled personal property consists of a $350,000.00 breach of contract and fraud claim against Joseph and Todd Smith, and $71,265.00 in other assets, including 4 vehicles, some excavating and office equipment, an airboat, and $3,000.00 in a checking account. Other than Smith's secured claim, GVT's scheduled liabilities include $9,358.00 in priority unsecured debt and $6,163.00 in general unsecured debt.[3]

Larry Compton, the chapter 7 trustee, filed a notice of asset determination on May 30, 2008. He moved to employ counsel on August 8, 2008. No further activity occurred in this case until almost one year later, on July 2, 2009, when Compton filed an application to employ a real estate agent and moved to sell the Haines real property, free and clear of liens, to a private party for $280,000.00. The purchase price was less than the balance due on the Smith deed of trust, but Smith's probate estate had consented to the proposed sale. The trustee's realtor would receive an 8% commission on the sale, plus reimbursement of actual costs. The bankruptcy estate would also receive 8% of the gross sale proceeds. The balance would go to the Smith probate estate.

On July 6, 2009, GVT filed a motion to convert this case to chapter 11. The trustee objected to the motion to convert; GVT opposed the trustee's motion to sell. Both motions were heard by the court on July 29, 2009. The hearing, which was lengthy, did not conclude until 5:00 p.m. that afternoon.

---

[2] Schedule D, filed Apr. 22, 2008 (Docket No. 1), and Proof of Claim No. 1, filed June 9, 2008.

[3] Schedules E and F, filed Apr. 22, 2008 (Docket No. 1).

2

Four witnesses testified at the hearing. One was GVT's managing member, Gilliam. Gilliam testified that he had found a better deal for the Haines property. An investor named Don Boyd was interested in investing in the property. Boyd is a commercial nut harvester from California who has invested in other property in Haines. He had been on several guided tours with GVT. He offered to invest in the Haines property for $350,000.00, with $30,000.00 to be paid on September 1, 2009, and the balance of $320,000.00 to be paid on November 1, 2009. Boyd also testified at the hearing.

Gilliam also stated that he had found a gold miner who was interested in entering into a working agreement to conduct mining activity on the Haines property. Glenn Slonski, the principal of Glacier Dredge Limited, also testified at the hearing. Slonski predicted that he would be able to recover substantial mineral deposits from the mining claims on the Haines property, using newer mining technology. He stated that he had been successful in recovering gold from several other old mining claims using the newer technology. The working agreement Slonski had signed provided that GVT would receive an advance, non-refundable royalty of $25,000.00 upon acceptance of the agreement. Glacier Dredge Limited would pay GVT a 15% royalty on gold recovered until GVT had been paid $415,000.00, and thereafter GVT would receive a 10% royalty. The term of the working agreement was to be 10 years. Slonski projected that GVT could receive as much as $100,000.00 from his mining activities this year alone.

Finally, the Smith probate estate's attorney, Daniel Bruce, testified at the hearing. Bruce described the history of the Smith deed of trust and the disputes between

3

Smith and GVT's members. Due to payment defaults, Smith commenced a non-judicial foreclosure proceeding in January, 2008. The foreclosure sale was scheduled for April 23, 2008. GVT asked Smith's counsel for a postponement of the sale, indicating that it needed more time to procure funding to pay off the Smith obligation. After Smith refused this request, GVT filed a civil action against Smith in state superior court alleging breach of an earlier settlement agreement, and then filed its chapter 7 petition on April 22, 2008.

At the conclusion of the July 29 hearing, this court made oral findings and indicated that it would grant the trustee's motion to sell and deny GVT's motion to convert. My findings were based on 11 U.S.C. § 707(b) and the best interest of creditor's test. My findings did not discuss the standard for conversion outlined in the Supreme Court's recent *Marrama* decision,[4] however. After the hearing, in preparation for the drafting of a memorandum decision, I reviewed the *Marrama* decision in detail. Because I felt I had not applied the standard for conversion set out in that decision, I scheduled a hearing for the next day, July 30, 2009, on my own motion, and made oral findings reversing my decision of the prior day. I compared the instant case to the facts in *Marrama*, and concluded that GVT's delay of 15 months in seeking to convert this case to chapter 11 did not constitute bad faith. I also concluded that the "best interest of creditors" test advanced by the trustee in opposing GVT's motion to convert was not equivalent to finding bad faith. Because GVT had not filed inaccurate or misleading schedules, or engaged in fraudulent transfers or the concealment of

---

[4] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).

4

assets, as had the debtor in *Marrama*, I concluded that there was no bad faith on the part of GVT which would preclude its motion to convert. Further, the witnesses produced by GVT – Gilliam, Boyd and Slonski – had been credible. It appeared GVT had received bona fide offers for investment in or use of the Haines property.

      An order denying the trustee's motion to sell free and clear, an order converting the case to chapter 11, and a judgment on both orders were entered on Friday, July 31, 2009. Smith filed a motion for reconsideration the same day. Smith asked that the court reconsider based on the factors elicited *In re FMO Associates*[5] for evaluating whether a debtor should be permitted to convert to chapter 11. I scheduled a third hearing, to consider the motion for reconsideration, for Monday, August 3, 2009.

      The *FMO* case was cited by GVT in support of its motion to convert as well as by Smith. In *FMO*, the court adopted a totality of the circumstances approach to find that a debtor's conduct did not "rise to the requisite level of bad faith" found in *Marrama*, and permitted conversion of the case to chapter 11.[6] The court noted that, under *Marrama*, only "atypical" or "extraordinary" conduct of a debtor would indicate bad faith in seeking to convert a case.[7] It applied the following factors to determine whether the conversion to chapter 11 would be indicative of bad faith:

      (1) the debtor has only one asset;

---

[5] *In re FMO Assoc. II, LLC*, 402 B.R. 546 (Bankr. E.D.N.Y. 2009).

[6] *Id.* at 552.

[7] *Id.* at 551.

5

>   (2)  the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
>   (3)  the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
>   (4)  the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
>   (5)  the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
>   (6)  the debtor has little or no cash flow;
>
>   (7)  the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>
>   (8)  the debtor has no employees.[8]

As in the instant case, the major asset of the debtor in *FMO* was unimproved real property. A foreclosure sale had been initiated prior to the time FMO filed its chapter 7 petition. FMO moved to convert its case to chapter 11 after its major secured creditor had obtained relief from stay so it could conclude its foreclosure sale. In its motion to convert, FMO revealed, for the first time, that it had entered a contract for sale of the realty. The purchase price exceeded all liens on the property. The debtor argued that it had the right to

---

[8] *Id., citing In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1311 (2nd Cir. 1997).

convert absent a showing of extreme circumstances. The United States Trustee supported conversion, contending that it was in the best interest of creditors and that the trustee hadn't established that the debtor had acted in bad faith during the pendency of the case under chapter 7.[9] The trustee opposed the debtor's motion. He argued that FMO had manipulated the bankruptcy process and attempted to hide assets because it had failed to provide accurate values for the property and or disclose the sale contract until three months after the chapter 7 petition was filed.[10] The court found that some the earmarks of bad faith were present in the case but concluded that, when looking at the totality of circumstances, the debtor's conduct was not so extraordinary or extreme as to warrant a finding of bad faith which would preclude eligibility under chapter 11.[11]

        The trustee, at the August 3rd hearing, offered another case which supports reconsideration: *In re Broad Creek Edgewater, LP.*[12] In that case, the court noted that a debtor's request for conversion could be denied for reasons other than bad faith.[13] It denied a debtor's motion to convert to chapter 11 because cause for conversion or dismissal of the

---

[9] *FMO Assoc.,* 402 B.R. at 548-49.

[10] *Id.* at 549.

[11] *Id.* at 552.

[12] 371 B.R. 752.

[13] *Id.* at 758.

case, under § 1112(b), existed.[14] Specifically, the debtor had no corporate management and the prospect for reorganization was "objectively futile."[15]

11 U.S.C. § 706(a) provides that a chapter 7 debtor "may" convert his case to one under chapter 11 "at any time," provided the case has not previously been converted from another chapter.[16] The ability to convert is not automatic, however. The Court in *Marrama* noted that nothing in § 706(a) "limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."[17]

A "typical" debtor is one who is "honest but unfortunate."[18] The question here is whether GVT is a typical, or atypical debtor. GVT's conduct didn't seem to fall within the extremes found in the *Marrama* case. There was no evidence that GVT had actively concealed assets or engaged in fraudulent activity. For these reasons I concluded that GVT's motion to convert should be granted and the trustee's motion to sell should be denied.

---

[14] *Id.* at 759.

[15] *Id.* at 759-60.

[16] 11 U.S.C. § 706(a).

[17] *Marrama*, 549 U.S. 374-75.

[18] *Id.* at 374.

8

However, GVT's conduct fits neatly within the factors considered by the court in the *FMO* case. This case is, essentially, a two-party dispute between GVT's members and Smith. Only one other creditor has filed a claim in this case, and it is for a nominal sum.[19] Further, the debtor's timing, both in filing its initial petition and seeking conversion to chapter 11, appear to be highly suspect. The chapter 7 petition was filed just days before a scheduled foreclosure sale. GVT's motion to convert followed on the heels of the trustee's motion to sell the Haines property. The trustee had given GVT's members ample opportunity to find a lucrative deal for the property.

Further, the two prospective deals GVT seems to have for the Haines property may not be as good as they appear at first blush. Boyd's financing offer didn't materialize until six days before the July 29 hearing. The testimony produced at the hearing established that Boyd understood that he was purchasing only a 40% interest, rather than the entire Haines property. There is no executed agreement between Boyd and GVT for the investment. And, while GVT has produced an executed working agreement for gold mining on the property, Slonski's projections regarding the profitability of the mining venture are speculative at this point. Finally, given the fact that this estate has essentially two valuable assets, the Haynes property and an airboat, and just two creditors, it is difficult to see how placing this case into chapter 11 would be beneficial. This would simply increase the

---

[19] *See* Proof of Claim No. 2, filed Aug. 26, 2008, by UHY Advisors MI, Inc. This is a general unsecured claim for $1,920.84.

9

administrative expenses and impede the liquidation process, at the expense of the two creditors.

Taking a closer look at the totality of the circumstances here, and particularly considering GVT's timing with respect to the filing of its petition and the motion to convert, I find that the factors outlined in the *FMO* case are satisfied. GVT has not engaged fraud, as was the case in *Marrama*. However, the circumstances support a finding of bad faith, which is cause for dismissal of a chapter 11 case.[20] For this reason, I will grant Smith's motion to reconsider.

A final procedural point will be made. Smith has moved for reconsideration, which is essentially a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e).[21] GVT asked, at the hearing on Smith's motion for reconsideration, why it was not given time to file a written response to the motion. There are three reasons. First, under local rule, an opposition to a motion for reconsideration is not to be filed unless the court requests one.[22] I did not ask for a written opposition in this instance. Further, Smith's motion for reconsideration was time critical. The trustee will lose his prospective buyer if this matter

---

[20] The trustee did not raise the issue of bad faith in his initial opposition to GVT's motion to convert, nor did he cite the *Marrama* or *FMO* cases. Instead, he asserted that the debtor had no realistic plan to retain the property, having failed to produce a legitimate "financial saviour" for the property despite its representations to the trustee that one existed. The trustee also said the court's decision regarding conversion should be based on what would most inure to the benefit of all parties in interest, and that GVT should be required to show how it would defeat a motion for relief from stay filed by Smith, if the case were to convert. *See* Trustee's Opposition to Motion to Convert to Chapter 11, filed Jul. 17, 2009 (Docket No. 33).

[21] Fed. R. Civ. P. 59(e) is made applicable to bankruptcy proceedings under Fed. R. Bankr. P. 9023.

[22] AK LBR 9023-1(b)(3).

10

is not resolved expeditiously. Finally, although GVT did not have an opportunity to file a written objection, its counsel was served with Smith's motion for reconsideration on July 31, and had an opportunity to state his objections to the motion on the record at the hearing three days later. There have been no procedural deficiencies here. Smith's motion for reconsideration will be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) and will be granted, as such.

An order and judgment will be entered consistent with this memorandum.

DATED: August 4, 2009

                                               BY THE COURT

                                               /s/ Donald MacDonald IV
                                               DONALD MacDONALD IV
                                               United States Bankruptcy Judge

Serve:  E. LeRoy, Esq.
         D. Bruce, Esq.
         M. Heiser, Esq.
         L. Compton, Trustee
         U. S. Trustee
               8/4/09